[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11324

_____

MAURICIO USME,
LUKASZ ZUTEREK,
CAROLINA VASQUEZ,
JAVIER PEREZ,
JOHAN ORTIZ,
LUZ GAVILAN,
MARVIN PAZ,

                                                Plaintiffs-Appellants,

*versus*

CMI LEISURE MANAGEMENT, INC.,
CRUISE MANAGEMENT INTERNATIONAL, INC.,
VIKAND MEDICAL SOLUTIONS, LLC,

2                    Opinion of the Court                    22-11324

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-21191-DPG

_____

Before JORDAN, LAGOA, and MARCUS, Circuit Judges.

JORDAN, Circuit Judge:

In March of 2020, the *M/V Greg Mortimer* set off on a cruise to the Antarctic but sailed head on into the COVID-19 storm. Seven of its crewmembers later filed suit against a number of companies in the Southern District of Florida, alleging that the pandemic exposed them to foreseeable harms, and that as a result of the ship's decision to sail, six of them were afflicted with the virus.

These crewmembers, however, had signed employment agreements with other companies containing forum-selection and choice-of-law clauses requiring many disputes to be brought in the Bahamas—the flag jurisdiction of the *Greg Mortimer*—under Bahamian law. Based on that forum-selection clause, the district court dismissed the action for *forum non conveniens*.

Following a review of the record, and with the benefit of oral argument, we vacate and remand. The defendants whom the crewmembers sued were not parties to the employment

agreements, and on the record before us they cannot invoke the forum-selection clause in those agreements.

## I

In reviewing an order dismissing a case for *forum non conveniens*, we accept as true the factual allegations in the complaint to the extent they are uncontroverted by affidavits or other evidence. *See Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1336 (11th Cir. 2020). And we draw all reasonable inferences in favor of the plaintiffs. *See id.* Unless otherwise noted, the following facts are taken from the crewmembers' amended complaint and have not been contested by affidavits or other evidence.

## A

In what now seems like a bad dream, the spring of 2020 saw the world stand still as a result of the COVID-19 pandemic. The *Greg Mortimer*, however, was scheduled to set sail from Ushuaia, Argentina, to the Antarctic on March 15, 2020. Just one day earlier, the Centers for Disease Control and Prevention had issued a "No Sail Order" applicable to cruise ships subject to the jurisdiction of the United States with a capacity of 250 or more passengers or crew operating in international waters. This "No Sail Order" was issued after about two months of previous guidance, warnings, and voluntary operation suspensions from various governmental and cruise industry entities.[1]

---

[1] The amended complaint is silent on whether the *Greg Mortimer* was governed by this "No Sail Order."

In Ushuaia, representatives and employees of CMI Leisure Management, Inc. ("CMI Leisure Management"), Cruise Management International, Inc. ("CMI, Inc."), and Vikand Medical Solutions, LLC ("Vikand") met with officials of the *Greg Mortimer* to determine whether to commence the cruise in light of the burgeoning pandemic.  At this meeting, one of the plaintiffs, Dr. Mauricio Usme (the ship's physician), strongly advised the companies against embarking on another cruise due to the health risks posed by COVID-19.  But the companies did not heed his warning.  Instead, the two CMI entities and Vikand made the decision for the *Greg Mortimer* to embark to the Antarctic as planned.

A week into the voyage, passengers began exhibiting COVID-19 symptoms and the ship activated its quarantine protocols.  Argentina, however, would not allow the *Greg Mortimer* to return to port, so the ship was diverted to Uruguay.  After anchoring in Uruguay, the passengers were permitted to disembark.  But the crew were required to remain onboard, quarantined in their cabins.  Eventually, on May 12, 2020, the crew were taken ashore in Uruguay and required to quarantine in their hotel rooms until they were repatriated at various times throughout the next month.  In the meantime, at least 33 of the vessel's 85 crewmembers tested positive for COVID-19, including six of the seven plaintiffs (Dr. Usme, Luz Gavilan, Marvin Paz, Carolina Vasquez, Javier Perez, and Johan Ortiz).

**B**

The crewmember plaintiffs filed a federal action in the Southern District of Florida against CMI Leisure Management, CMI, Inc., and Vikand. In their amended complaint, they asserted claims under the Jones Act, 46 U.S.C.A. §§ 30104, as well as claims for negligence and maintenance and cure under general maritime law for their physical and emotional distress while onboard.[2]

The defendants moved to dismiss the amended complaint for improper venue, or alternatively, for failure to state valid claims. They argued that each of the crewmembers had signed employment agreements that required all disputes arising from their employment to be brought in the Bahamas and to be governed by Bahamian law. According to the defendants, therefore, venue in the Southern District of Florida was improper.

The crewmembers' employment agreements each contained the following choice of law and forum-selection provision:

> I further agree that any dispute of any nature arising out of this Contract of Employment or my employment onboard the vessel shall be governed by the Laws of the Vessel's Flag State, except as expressly provided herein and any disputes hereunder shall be adjudicated in that jurisdiction only. . . .

---

[2] As noted, one of the plaintiffs, Lukasz Zuterek—the ship's safety officer—did not get COVID-19. But he alleged that he was in the "zone of danger" and asserted claims for false imprisonment and wrongful termination.

6                    Opinion of the Court                    22-11324

> The parties to this contract hereby stipulate that the terms and conditions laid down herein shall be subject to the applicable provisions of the Maritime Law and Regulations of the country under which Flag the Vessel is sailing. Any dispute as to the terms and conditions of this contract shall be resolved in accordance with the Maritime Law and the country under which Flag the Vessel is sailing.

*See* Composite Employment Agreements, D.E. 17-1–17-2.    As noted earlier, the *Greg Mortimer* was flagged in the Bahamas.

But the defendants sued by the crewmembers—CMI Leisure Management, CMI, Inc., and Vikand—were not parties to the employment agreements.  Ms. Vasquez, Mr. Perez, Mr. Ortiz, Ms. Gavilan, and Mr. Paz were all employees of non-party CMI Leisure, Ltd.  Their agreements were signed by CMI Leisure Management on behalf of CMI Leisure, Ltd., but "as agents only."  Dr. Usme and Mr. Zuterek were employees of non-party Greg Mortimer Owner Ltd.  Their agreements were signed by CMI, Inc. on behalf of Greg Mortimer Owner Ltd., but again "as agents only."[3]

---

[3] The agreements for Dr. Usme and Mr. Zuterek actually reflect the employer's name as Infinity Owner I Ltd., which was the former name of Greg Mortimer Owner Ltd.  In July of 2019, Infinity Owner I Ltd. changed its name to match the vessel's new name. Although Dr. Usme and Mr. Zuterek signed their agreements after the name change, the documents were prepared using the Infinity Owner I Ltd. name. None of the parties take issue with this, so we don't either.

## C

The district court noted that a Rule 12(b)(3) motion to dismiss for improper venue is the incorrect procedural vehicle to enforce a forum-selection clause where, as here, venue was otherwise proper. The court nevertheless granted the defendants' motion to dismiss on *forum non conveniens* grounds "in the interest of judicial economy." D.E. 38 at 4.[4]

In its order, the district court ruled that it could consider the forum-selection clause contained in the employment agreements attached as exhibits to the motion to dismiss and that CMI, Inc. and CMI Leisure Management were entitled to enforce that clause under the doctrine of equitable estoppel. *See id.* at 6–8. The court also ruled that Vikand—also a non-party to the agreements—was equally entitled to enforce the forum-selection clause because the crewmembers' claims against it were so "closely related to the dispute that it [was] foreseeable" that those claims would be subject to the forum-selection provision. *See id.* (internal citation omitted). Having found the forum-selection clause valid, and enforceable by the defendants, the court utilized the "modified" *forum non conveniens* analysis from *Atlantic Marine Construction Co. v. U.S. District*

---

[4] Though we understand and appreciate the interest in judicial economy, especially in light of the partly overlapping analyses for improper venue and *forum non conveniens*, the district court would have been better served by providing the parties notice and an opportunity to brief *forum non conveniens* after *sua sponte* recharacterizing the defendants' motion to dismiss.

*Court for Western District of Texas*, 571 U.S. 49, 62 (2013), and concluded that dismissal was warranted.  *See* D.E. 38 at 4–5, 9–10.

## II

Because "[t]he *forum non conveniens* determination is committed to the sound discretion of the [district] court," we review its dismissal order for abuse of discretion.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).  "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference."  *Id.*

On the other hand, plenary review governs the enforcement of a forum selection clause and the application of equitable estoppel.  *See Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009); *Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012).  Any findings of fact relevant to the enforceability of a forum selection clause are reviewed for clear error.  *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000).

## III

The district court ruled that CMI Leisure Management, CMI, Inc., and Vikand—the defendants here and all non-parties to the employment agreements—were entitled to enforce the forum-selection clause under the doctrine of equitable estoppel.  The court then employed the modified *forum non conveniens* balancing test from *Atlantic Marine* and concluded that dismissal was appropriate.  Because we hold that equitable estoppel does not apply

under these circumstances, we vacate and remand for further proceedings.

## A

*Forum non conveniens* is a flexible, common law doctrine that provides a district court with inherent power to decline to hear a case in which there is proper jurisdiction and venue. *See Otto Candies*, 963 F.3d at 1338. "[T]he central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient[.]" *Piper Aircraft*, 454 U.S. at 256. A defendant bears the burden of justifying dismissal based on *forum non conveniens*, and to satisfy this burden it must establish that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his [or her] suit in the alternative forum without undue inconvenience or prejudice." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001)).

In a typical case—i.e., one not involving a forum selection clause—a district court considering a *forum non conveniens* motion must evaluate both the convenience of the parties (the private-interest factors) and various public interest considerations. *See Atl. Marine*, 571 U.S. at 62. The private-interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises . . . ; and all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Piper Aircraft*, 454 U.S. at 241 n.6

(quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The public interest factors include the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the difficulty in determining applicable law and applying foreign law. *See id*. *See also King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1384 (11th Cir. 2009).

Where there is a valid forum-selection clause, however, the *forum non conveniens* analysis is modified in three consequential ways. First, "the plaintiff's choice of forum merits no weight." *Atl. Marine*, 571 U.S. at 63. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that dismissal for *forum non conveniens* is unwarranted. *See id*. Second, a court should not consider arguments about the parties' private interests and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id*. at 64. Third, a "court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right," and this in turn may affect the public-interest considerations. *See id*. at 65–66.[5]

As a result, the Supreme Court has said that the existence of a valid and enforceable forum-selection clause is essentially

---

[5] Although the third modification is more relevant to motions to transfer under 28 U.S.C. § 1404(a), the Supreme Court has explained that "the same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to state or foreign forums." *Atl. Marine*, 571 U.S. at 66 n.8.

dispositive in the *forum non conveniens* analysis. *See id.* at 62–64 (explaining that "the practical result" of a forum-selection clause is that the clause "should control except in unusual cases"). *See also GDG Acquisitions, LLC v. Government of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (noting that "an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis). This is so because "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine*, 571 U.S. at 66. *See also The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13 (1972) ("There are compelling reasons why a freely negotiated private international agreement . . . should be given full effect."); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974) ("A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) ("*The Bremen* and *Scherk* establish a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions."). This rationale presupposes, of course, the existence of an agreement between the parties containing an enforceable forum selection clause.

Here, the defendants seeking to enforce the forum-selection clause in the crewmembers' respective employment agreements are not parties to those agreements. We therefore first

address whether CMI Leisure Management, CMI, Inc., and Vikand can enforce the forum-selection clause against the crewmembers.

**B**

A forum selection clause, like an arbitration clause, is a contractual provision that cannot ordinarily be invoked by or against one who was not a party to the agreement in which the clause appears. *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998). *See also Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169 (11th Cir. 2009) (choice of law clause). This general rule, like most, has its exceptions. The Supreme Court has noted that a non-party to a contract may enforce its provisions "through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, at 183 (4th ed. 2001)).

Whether any of these exceptions apply is governed by "traditional principles" of applicable state law. *See id*. But the parties here have litigated on the assumption that federal common law governs whether the defendants can enforce the forum selection clause in the employment agreements against the crewmembers. Therefore, we assume without deciding that federal common law applies. *See Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1320 (11th Cir. 2013) (assuming without deciding that federal common law applied where the parties briefed and argued the case under that law).

The district court ruled that the defendants could enforce the employment agreements' forum-selection clause against the crewmembers pursuant to the doctrine of equitable estoppel. *See* D.E. 38 at 7–8. Specifically, the court noted that the crewmembers alleged that they were employed by CMI Leisure Management and CMI, Inc., and sought Jones Act protections based on that employment relationship. *See id.* at 7. Therefore, the court reasoned, the crewmembers were not entitled to seek the benefits of the employment agreements—such as Jones Act protections—while simultaneously attempting to avoid the forum-selection clause in those same agreements. *See id.* at 7–8. At first glance this appears to be a reasonable determination, but under established equitable estoppel principles and nuances of federal maritime law, it is incorrect.[6]

Equitable estoppel allows a non-party to enforce the provisions of a contract against a signatory in two circumstances. The first is when the signatory to the contract relies on the terms of the contract to assert his or her claims against the non-party. And the second is when the signatory raises allegations of interdependent and concerted misconduct by both the non-party and one or more

---

[6] On appeal, the defendants suggest that the *forum non conveniens* dismissal was also based on agency principles. *See* Appellees' Br. at 24. Although the district court did in fact say in its dismissal order that "CMI, Inc. and [CMI Leisure Management] actually signed the Employment Agreements as agents for the Owners," D.E. 38 at 7, that passing statement is inadequate to constitute a sufficient ruling on the matter of agency. On remand, the parties are free to argue whether agency principles apply so as to permit the defendants to enforce the forum-selection clause.

14                   Opinion of the Court                   22-11324

of the signatories to the contract. *See Byers*, 701 F.3d at 1342 (citation omitted).[7]

The district court expressly relied on the first of these circumstances. And CMI Leisure Management, CMI, Inc., and Vikand have not raised the concerted misconduct theory on appeal as an alternative ground for affirmance. *See* Appellees' Br. at 25–31. We therefore limit our discussion to whether the crewmembers relied on the terms of their employment agreements in asserting their claims against the defendants.

A signatory relies on the terms of a contract when its claims are "intimately founded in and intertwined with the underlying contract obligations." *Byers*, 701 F.3d at 1343 (internal quotation and citation omitted). Importantly, in this circuit, a but-for relationship between the claims and the contract to be enforced "alone

_____

[7] We also recognized a "somewhat different" theory in *Lipcon*, 148 F.3d at 1299. *See Cooper*, 575 F.3d at 1170. We explained in *Lipcon* that "[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Lipcon*, 148 F.3d at 1299 (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). Specifically, the *Lipcon* panel concluded that the non-signing parties were bound by choice of law and forum-selection clauses because the parties' rights were "completely derivative of those of the [signing parties]—and thus 'directly related to, if not predicated upon' the interests of the [signing parties].'" *Id.* (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1297 (3d Cir. 1996)). In a footnote, the district court here briefly cited to the *Lipcon* foreseeability analysis to conclude that Vikand was able to enforce the forum-selection clause. *See* D.E. 38 at 8 n.7. That conclusion, however, was based on the underlying premise that CMI Leisure Management and CMI, Inc. were able to enforce the clause, which, as explained in the text, was error.

is not enough to warrant equitable estoppel." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1174 (11th Cir. 2011). Rather, the signatory "must actually depend on the underlying contract to make out his or her claim against the nonsignatory." *Byers*, 701 F.3d at 1343. *See also In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (a "plaintiff's actual depend[e]nce on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel"), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003). To actually rely on the contract, the signatory's claims "must attempt to hold the nonsignatory to the terms of the contract." *Byers*, 701 F.3d at 1343 (citing *Becker v. Davis*, 491 F.3d 1292, 1300 (11th Cir. 2007), *abrogated on other grounds by Carlisle*, 556 U.S. at 624). *See also MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) ("When each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise out of and relate directly to the written agreement. . . .'") (alterations adopted) (internal citations omitted), *abrogated on other grounds by Carlisle*, 556 U.S. at 624. "In essence, equitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Byers*, 701 F.3d at 1342.

## C

Given this body of caselaw, we cannot say that the crewmembers' claims against the non-signatory defendants are so

"intimately founded in and intertwined with the underlying contract obligations" that equitable estoppel is warranted. *See id.* at 1343. The crewmembers do not rely on their employment contracts to assert their Jones Act and general maritime claims. Instead, the crewmembers allege that—contrary to what the agreements indicate—they are employees of CMI Leisure Management and CMI, Inc., respectively, pursuant to principles of general maritime law, and alternatively, under the borrowed servant doctrine.

Under the Jones Act, "a seaman has the advantages of the Act only against his employer." *Cosmo. Shipping Co. v. McAllister*, 337 U.S. 783, 787 n.6 (1949). Notwithstanding the Supreme Court's statement that "only one person, firm, or corporation can be sued as employer," *id.* at 791, the former Fifth Circuit—in cases that are binding on us—has recognized the borrowed servant doctrine. *See, e.g.*, *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 178 (5th Cir. Unit A Sept. 1981); *Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980). "The borrowed servant doctrine is the functional rule that places the risk of a worker's injury on his actual rather than his nominal employer," and "permits the injured worker to recover from the company that was actually directing his work." *Baker*, 656 F.2d at 178. When a seaman contends that the borrowed servant doctrine applies, he or she must prove the employment relationship, which is determined as a question of law. *See Guidry*, 614 F.2d at 455; *Gaudet v. Exxon Corp.*, 562 F.2d 351, 357–58 (5th Cir. 1977).

Though the seaman must establish the existence of an employee-employer relationship, *see Pennington v. Pac. Coast Transp.*

*Co.*, 419 F.2d 122, 124 (5th Cir. 1969), that relationship need not be spelled out in writing. The Jones Act "does not require proof a written employment agreement." *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 1003 (9th Cir. 2017), *abrogated on other grounds by GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432 (2020). And though there are various criteria for determining whether there is an employment relationship under the borrowed servant doctrine, a written contractual agreement between the servant and borrowing employer is not one of them. *See, e.g.*, *Baker*, 656 F.2d at 178 (listing criteria).[8]

The short of the matter is that the requisite Jones Act employment relationship under the borrowed servant doctrine may exist without a written contractual agreement. As such, the claims here do not necessarily arise out of the crewmembers' employment agreements with the non-party entities. When claims are asserted against entities that are not parties to an employment

---

[8] The non-exhaustive criteria to be considered includes (1) who has control over the employee and the work he or she is performing, beyond mere suggestion of details or cooperation?; (2) whose work is being performed?; (3) was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?; (4) did the employee acquiesce in the new work situation?; (5) did the original employer terminate his relationship with the employees?; (6) who furnished tools and place for performance?; (7) was the new employment over a considerable length of time?; (8) who had the right to discharge the employee?; and (9) who had the obligation to pay the employee? *See Baker*, 656 F.2d at 178 (quoting *Gaudet*, 562 F.2d at 355).

18                    Opinion of the Court                    22-11324

agreement, those claims generally will not "actually depend" on the agreement. *See Byers*, 701 F.3d at 1343.[9]

### D

CMI Leisure Management, CMI, Inc., and Vikand maintain that they submitted evidence as to the crewmembers' true employment to refute the borrowed servant theory, and assert that the district court considered that evidence and rejected the crewmembers' claims of a borrowed servant relationship as a matter of law. *See* Appellees' Br. at 22–23. We disagree. First, the crewmembers also presented evidence that the parties to the agreement were nothing more than paper entities. Second, though the court did "consider" the defendants' declarations, it did not analyze or make any factual determinations about the existence or non-existence of a borrowed servant relationship. Indeed, the court's analysis as to equitable estoppel makes no mention of the borrowed servant doctrine at all and relies exclusively on the employment agreements.[10]

---

[9] This is not to say that seamen intending to bring Jones Act or general maritime claims against an employer with which they *do* have a contract are permitted to forego the provisions of those contracts. *See, e.g.*, *Cvoro v. Carnival Corp.*, 941 F.3d 487, 503–04 (11th Cir. 2019). But when seamen bring Jones Act claims under the borrowed servant doctrine against entities that are not parties to their employment agreement, as here, the employment agreement does not necessarily form the basis of their claims. This is particularly so when there are no factual findings by the district court with respect to the borrowed servant theory.

[10] Although the existence of an employee-employer relationship is ultimately a question of law, it cannot be answered in the abstract and must be determined based on the underlying facts. Here, the parties presented conflicting

It is likely true that but for the agreements with the non-party signatory entities, the crewmembers here would not have been employed on the *Greg Mortimer* at all. And without such employment, they would have no Jones Act or general maritime claims against any of the entities (whether signatories or non-signatories). But this is the kind of but-for relationship we have deemed insufficient to warrant equitable estoppel in similar cases that bind us. *See, e.g.*, *Byers*, 701 F.3d at 1345 (rejecting the argument that "but for Byers entering into the lot purchase contract, he would not have entered into the mortgage note and been a victim of the alleged appraisal fraud," and holding that "[a]lthough Byers would have never entered into the mortgage note without first entering into the lot purchase contract to buy the lot, this but-for relationship is . . . not enough to warrant the application of equitable estoppel"); *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1119 (11th Cir. 2020) (concluding that even where a plaintiff's complaint references certain facts that might presuppose the existence of the relevant contracts, if the complaint does not discuss the actual terms of those contracts, there is no reliance on the contracts' terms for equitable estoppel purposes).

Under the borrowed servant doctrine, the crewmembers do not attempt to hold non-parties to the terms of their employment agreements with other entities; nor do they "rely on the terms of

---

evidence on the employment relationship, but the district court never made any factual findings to resolve the dispute. So, we cannot say at this point that the claims are based on the agreements.

the written agreement in asserting [their] claims." *MS Dealer*, 177 F.3d at 947 (internal citation and quotations omitted). Accordingly, on this record, equitable estoppel did not allow CMI Leisure Management, CMI, Inc., and Vikand to invoke and enforce the forum-selection clause in the employment agreements.[11]

## IV

Our ruling is narrow. We do not decide whether the forum-selection clause is unenforceable by the defendants on a theory other than equitable estoppel. Nor do we opine on any of the other issues asserted by the crewmembers. We hold only that, on this record, the district court erred in basing its *forum non conveniens* dismissal on an incorrect belief that equitable estoppel permitted the non-signatory defendants to invoke and enforce the forum-selection clause in the crewmembers' employment agreements.

The district court's mistaken reliance on equitable estoppel tipped the scales of the *forum non conveniens* analysis in favor of dismissal under *Atlantic Marine*. Accordingly, we vacate the order of dismissal and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED**.

---

[11] We note that the retaliatory discharge claim asserted by Mr. Zuterek did reference his employment agreement with the owners of the vessel, but the defendants did not brief this issue on appeal.